UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                          :

DAVID SPINDEL,                       :
                                          :

                   Plaintiff,    :             1:23-cv-9961-GHW-JW
                                          :

          -v-               :           MEMORANDUM
                                          :      OPINION & ORDER

KROLL, LLC; *and* KEVIN NOWASKEY,    :

                                          :

               Defendants.  :
                                          :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/27/2026

## I.    INTRODUCTION

Defendant Kevin Nowaskey matched with Plaintiff David Spindel on Tinder. Mr. Nowaskey then exploited his role as an executive at Defendant Kroll, LLC ("Kroll") to press Mr. Spindel for sex. The lure: the chance for a lucrative internship with Kroll. Mr. Spindel, a college student in Ohio, took the bait. Mr. Spindel travelled to Mr. Nowaskey's home in Connecticut to interview for the purported internship. While Mr. Spindel was in Connecticut, Mr. Nowaskey sexually assaulted him. The internship never materialized. Mr. Spindel eventually pleaded his belief that the internship "never existed."

Mr. Spindel filed this suit against both Mr. Nowaskey and Kroll, asserting that both had violated his rights under the New York State Human Rights Law and the New York City Human Rights Law. But well after the suit was filed, Mr. Nowaskey died, leaving Kroll alone as the only target of Plaintiff's claims.

Magistrate Judge Jennifer E. Willis issued a thoughtful report and recommendation ("R&R") recommending that the Court grant Defendant Kroll's motion to dismiss. Plaintiff timely objected. For the reasons that follow, the Court adopts Judge Willis's R&R in part. Because the internship in New York used to attract Mr. Spindel "never existed" and he was not a resident of New York City

or State, New York's "impact test" is not satisfied, and he may not pursue claims under either the NYSHRL or the NYCHRL. Therefore, Defendant Kroll's motion to dismiss is GRANTED.

## II.    BACKGROUND

### A.  Facts[1]

Familiarity with the facts of this case is presumed. The reader is referred to the R&R for a comprehensive description of the facts and procedural history of this case. A summary of the relevant allegations and procedural history is provided here for context.

David Spindel was a junior in college when this case began to unspool. FAC ¶ 22. Mr. Spindel was gay. *Id.* ¶ 5. Mr. Spindel matched with Defendant Kevin Nowaskey on Tinder, the online dating application. *Id.* ¶ 21. Mr. Spindel does not allege that he was looking for work on Tinder, but after he matched with Mr. Nowaskey, Mr. Spindel discovered that Mr. Nowaskey's profile stated that Mr. Nowaskey worked in "investment banking." *Id.* ¶ 23. So, Mr. Spindel started communicating with Mr. Nowaskey using Tinder's platform. *Id.* ¶ 24. Mr. Spindel told Mr. Nowaskey that "he was a college student and was interested in working in investment banking after graduation." *Id.* ¶ 25.

"Seeing an opportunity to take advantage of Plaintiff's situation, Defendant NOWASKEY then exploited his position at Defendant KROLL and/or Duff & Phelps to bait Plaintiff into a sexual relationship." *Id.* ¶ 26. Mr. Spindel and Mr. Nowaskey communicated by Zoom. *Id.* ¶ 32. "[T]he conversation began formally and professionally" and Mr. Nowaskey "purported to have hiring authority at Defendant KROLL and/or Duff & Phelps," but "out of nowhere," Mr. Nowaskey began to masturbate in front of Mr. Spindel. *Id.* ¶¶ 32–34. Mr. Nowaskey asked Mr.

---

[1] The facts are taken from the First Amended Complaint, Dkt. No. 7 ("FAC"), and are accepted as true for the purposes of this motion. *See, e.g., Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Spindel to show him his penis.  *Id.* ¶ 35.  Mr. Spindel, uncomfortable "given that his mother was home and in a nearby room," declined to do so and instead guided the conversation "back to banking and finance."  *Id.* ¶¶ 36–37.  "Shortly after, Defendant NOWASKEY told Plaintiff that he was impressed with him, and offered Plaintiff an internship at Defendant KROLL and/or Duff & Phelps' New York office."  *Id.* ¶ 38.

Later that night, "fixated on luring Plaintiff to his home for sex," Mr. Nowaskey insisted that Mr. Spindel travel to New York "so that he could attend two in-person interviews with other members of Defendants' upper management."  *Id.* ¶ 42.  Mr. Nowaskey told Mr. Spindel that the interviews would be two weeks apart, and that, in the intervening period, Mr. Spindel could stay with Mr. Nowaskey at his home in Greenwich, Connecticut.  *Id.* ¶ 43.

Mr. Spindel "felt as though the situation had some 'red flags,'" but he dismissed his concerns and travelled to Connecticut.  *Id.* ¶ 44.  Mr. Nowaskey told Mr. Spindel that he "intended to forward Plaintiff's resume to HR as a 'hiring formality.'"  *Id.* ¶ 46.  "However, the next day, Defendant NOWASKEY made it clear to Plaintiff that Plaintiff's potential job opportunity was contingent upon his willingness to engage in sexual intercourse with him."  *Id.* ¶ 47.

Mr. Nowaskey and Mr. Spindel exchanged naked pictures before Mr. Spindel travelled to spend time with Mr. Nowaskey.  *Id.* ¶¶ 50–52.  "Plaintiff understood that his prospective stay with Defendant NOWASKEY may have required him to engage in sexual intercourse with him. However, reluctantly, Plaintiff was willing to do whatever it took to secure a prestigious internship in the banking and finance industry."  *Id.* ¶ 53.

"Excited about the prospect of having successfully manipulated a college student to live with him, Defendant NOWASKEY then began to pepper Plaintiff with professional promises (via text message) . . . ."  *Id.* ¶ 54.  In one message, Mr. Nowaskey told Mr. Spindel:  "Your resume just got the rubber stamp from HR and was forwarded to the IBD North America head for final approval."

*Id.* ¶ 55 (emphasis omitted). "However, this was false, and another deliberate act to dangle the internship opportunity in front of Plaintiff in exchange for sex . . . ." *Id.* ¶ 56.

Eventually, Mr. Spindel did travel to Connecticut to stay with Mr. Nowaskey. *Id.* ¶ 60. As he anticipated, Mr. Nowaskey pressured Mr. Spindel for sex. *Id.* ¶¶ 66–67. "Consequently, feeling powerless and not wanting to squander the internship opportunity, Plaintiff engaged in non-consensual sex with Defendant NOWASKEY." *Id.* ¶ 68. As Mr. Nowaskey pursued his advances, Mr. Spindel continued to "'play along' to avoid jeopardizing his potential employment with Defendant KROLL and/or Duff & Phelps." *Id.* ¶ 71.

Mr. Spindel's stay with Mr. Nowaskey at his home in Connecticut was permeated with sexual pressure. Mr. Spindel was shown a room in which he could do his schoolwork and "prepare for the 'internship.'" *Id.* ¶ 69 (scare quotes around "internship" in original). Mr. Nowaskey asked Mr. Spindel for sex and offered to make Mr. Spindel "his beneficiary;" he also offered to buy him a Range Rover. *Id.* ¶¶ 73–85. Mr. Spindel found Mr. Nowaskey's behavior to be "obsessive, controlling, and erratic." *Id.* ¶ 84. "However, again, Plaintiff felt obligated to acquiesce in order to keep his job prospect with Defendant KROLL and/or Duff & Phelps intact and to see if Defendant NOWASKEY's promise of employment would eventually come to fruition." *Id.*

Mr. Spindel and Mr. Nowaskey argued. *Id.* ¶ 90. During the argument, "Plaintiff told Defendant NOWASKEY that he was skeptical about whether the internship was real. In turn, Defendant NOWASKEY told Plaintiff that the internship was 'definite' and that even if he and Plaintiff 'did not work out,' 'nothing would change.'" *Id.* ¶ 92. "In reality, Defendant NOWASKEY wanted to keep Plaintiff in his home, as a potential sex object, and used his position at Defendant KROLL and/or Duff & Phelps to manipulate him into staying within this increasingly abusive situation." *Id.* ¶ 93. Despite his concerns, Mr. Spindel chose to stay with Mr. Nowaskey "in hopes that this dysfunctional scenario would eventually materialize into a job at Defendant KROLL

and/or Duff & Phelps." *Id.* ¶ 95.

After Mr. Spindel rebuffed several more of his requests for sex, Mr. Nowaskey told Mr. Spindel that he had to go home. *Id.* ¶ 106. Mr. Nowaskey threatened to blacklist Mr. Spindel from the "entire investment industry if he did not give in to his sexual demands." *Id.* ¶ 107. "Eventually, on or about December 19, 2020, enough was enough, and Plaintiff left Defendant NOWASKEY's home without having ever formally interviewed for the internship at Defendant KROLL and/or Duff & Phelps . . . ." *Id.* ¶ 109.

Mr. Spindel heard nothing from Defendants about the internship in the following weeks. *Id.* ¶ 110. Mr. Spindel wrote to a contact in Kroll's human resources organization, "reaching out for information on the [internship] program and to see if there is anything that I can do before it starts." *Id.* ¶ 111. He received no response. *Id.* So, Mr. Spindel reached out to Mr. Nowaskey "to further inquire about the status of the internship." *Id.* ¶ 112. "However, Defendant NOWASKEY now claimed (conveniently) that Plaintiff was not qualified for the internship, despite having never raised concerns about Plaintiff's experience or credentials in the past." *Id.* Mr. Nowaskey also told Mr. Spindel that he had entered into a serious relationship. *Id.*

"Plaintiff was ultimately never offered an internship at Defendant KROLL and/or Duff & Phelps." *Id.* ¶ 114. Mr. Spindel expressly alleged that the reason why he was not offered an internship was because the internship never existed. He wrote that he did not receive an internship "because in reality, the internship opportunity at Defendant KROLL and/or Duff & Phelps never existed and Defendant NOWASKEY exploited his position to manipulate and solicit sexual acts from an impressionable, twenty-one year-old college student." *Id.* ¶ 115. "Plaintiff's prospective employment at Defendant KROLL and/or Duff & Phelps was conditioned upon his willingness to engage in a romantic and/or sexual relationship with Defendant NOWASKEY." *Id.* ¶ 117.

### B.  Procedural History

Plaintiff filed the operative complaint—the FAC—on November 30, 2023.  *See generally* FAC.  The FAC asserted a variety of causes of action against both Mr. Nowaskey and Kroll. Plaintiff alleged that both Defendants discriminated against him based on his gender in violation of each of the New York State Human Rights Law (the "NYSHRL") (Count I) and the New York City Human Rights Law (the "NYCHRL") (Count III).  Plaintiff also alleged that both Defendants retaliated against him because of his choice to rebuff some of Mr. Nowaskey's advances in violation of the NYSHRL (Count II) and the NYCHRL (Count IV).  Mr. Spindel also asserted several claims against Mr. Nowaskey alone.  Those claims arose under Connecticut state law (recognizing that Mr. Nowaskey's conduct occurred solely in Connecticut) and included claims for assault and battery (Count V), intentional infliction of emotional distress (Count VI), and false imprisonment (Count VII).

In February 2024, each of the defendants moved to dismiss the claims against them.  Dkt. No. 26 (Nowaskey notice of motion); Dkt. No. 28 (Kroll notice of motion).  Mr. Spindel opposed the motions.  Dkt. Nos. 33, 34.  The motions were fully briefed in April 2024, when Defendants filed their respective replies.  Dkt. Nos. 37, 40.

On August 15, 2024, Magistrate Judge Jennifer E. Willis, to whom this case was referred, entered her report and recommendation in response to Defendants' motions.  Dkt. No. 41 (the "R&R").  The R&R recommended that the Court deny Mr. Nowaskey's motion to dismiss the state law claims against him for assault and intentional infliction of emotional distress.  *Id.* at 25–30. Because Mr. Spindel withdrew his claim for false imprisonment in his opposition, the R&R recommended that Mr. Nowaskey's motion to dismiss that claim be granted.  *Id.* at 30.

Judge Willis also recommended that the Court dismiss Mr. Spindel's claims against both Defendants under the NYSHRL and the NYCHRL.  To reach that recommendation, Judge Willis

considered several different arguments presented by the parties.  Here, for clarity, the Court reorganizes the order of Judge Willis's recommendations and omits some.

First, Judge Willis recommended that the Court find that Mr. Spindel could not pursue a claim under either the NYSHRL or the NYCHRL because his claims did not satisfy the requirement that the offending conduct have an "impact" on New York State and New York City, respectively. As pleaded, none of Mr. Nowaskey's interactions with Mr. Spindel took place while either man was located in New York.  Plaintiff argued, however, that there was a sufficient nexus with New York because he was applying for an internship in New York.

Judge Willis concluded that the impact test was not satisfied because Mr. Spindel had not pleaded that he had applied for an "actual" job in New York:  To reach that conclusion, Judge Willis looked closely at the New York Court of Appeals' opinion in *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446 (2024).  In it, the Court of Appeals held that "the New York City and New York State Human Rights Laws each protect nonresidents who are not yet employed in the city or state but who proactively sought an *actual* city- or state-based job opportunity."  *Id.* at 449 (emphasis added).  Judge Willis concluded that Mr. Spindel had not pleaded that he had applied for an actual job, and that therefore the impact test had not been satisfied.  To reach that conclusion, she reasonably focused on Mr. Spindel's assertion in the complaint that "in reality, the internship opportunity at Defendant KROLL and/or Duff & Phelps never existed."  FAC ¶ 115.

Second, Judge Willis recommended that the Court grant Defendants' motions to dismiss Plaintiff's failure to hire claim.  Judge Willis laid out the elements for a failure to hire claim as requiring that a plaintiff plead that "(1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination."  *Vivenzio v. City of Syracuse,*

611 F.3d 98, 106 (2d Cir. 2010).[2] Judge Willis recommended that the failure to hire claims against both Defendants should be denied because Mr. Spindel never formally applied for the internship, and because Mr. Spindel did not adequately plead that the process that he engaged in with Mr. Nowaskey had been endorsed by Kroll as an informal procedure to apply for any job. R&R at 12. Judge Willis also concluded that the claim was inadequately pleaded because, despite the allegations of sexual harassment by Mr. Nowaskey, the "Amended Complaint does not allege any invidious remarks about Plaintiff Spindel not being openly homosexual." *Id.* at 14.

Third, Judge Willis recommended the dismissal of Plaintiff's claims for employment discrimination against Defendant Kroll because Plaintiff was never employed by Kroll. She reasoned that "'[e]ven though the word person is used in the NYSHRL and the NYCHRL, the statutes still only refer to an employee' when addressing conduct in the workplace." R&R at 24 (quoting *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013)). Therefore, she concluded that "[s]ince Plaintiff Spindel was never an employee of Defendant Kroll, he cannot assert claims under New York human rights laws against the Defendants for hostile work environment and quid pro quo sexual harassment." *Id.*

Before reaching the conclusion that Kroll could not be held liable because it never employed Mr. Spindel, Judge Willis considered whether Kroll could be held liable for the conduct of Mr. Nowaskey. She concluded that Kroll could be held liable for his conduct under both the NYSHRL and the NYCHRL. With respect to the NYSHRL, Judge Willis quoted *Castillo v. Isakov*, No. 22-CV-6888, 2023 WL 6664552, at *6 (S.D.N.Y. Oct. 12, 2023), for the proposition that "where it is an upper-level supervisor who is responsible for the discrimination, liability is automatically imputed to the corporation, as the involvement of an upper-level supervisor establishes the corporation's

---

[2] The Court notes that *Vivenzio* announced the standard for a claim under Title VII and a claim under the NYSHRL as in effect in 2010, not the NYSHRL or the NYCHRL as in effect as of the date of the filing of this action. The parties did not object to the R&R's statement of the law; the Court adopts it applying clear error review.

acquiescence or condonation." Because Mr. Nowaskey was pleaded to be an upper-level supervisor at Kroll, the R&R concluded that Kroll could be held liable for his conduct under the NYSHRL notwithstanding the lack of allegations that Kroll condoned his conduct. And with respect to the NYCHRL, the R&R noted that "the NYCHRL imposes strict liability on employers for discriminatory acts of their supervisory or managerial employees." R&R at 20. Therefore, the R&R concluded that Kroll could be held liable for the acts of Mr. Nowaskey—had the claims been adequately pleaded. *Id.*

Fourth, the R&R recommended that Plaintiff's claims under the NYSHRL and the NYCHRL against Mr. Nowaskey be dismissed. The R&R concluded that Plaintiff could not pursue claims against Mr. Nowaskey under either statute because Mr. Spindel was not an employee of Kroll at the time of Mr. Nowaskey's assaults. *Id.* at 24. And the R&R recommended that the NYSHRL claim against Mr. Nowaskey be dismissed for an independent reason—because individuals could not be held liable under that statute and he could not be held liable for aiding and abetting of his own misconduct. *Id.* at 8–9.

And finally, the R&R recommended that Plaintiff's claims for retaliation under the NYCHRL and the NYSHRL be dismissed. The principal reason for that recommendation was the R&R's conclusion that the complaint did not plead the existence of an actual job of which Plaintiff was deprived. *Id.* at 22. And as to Kroll, Judge Willis recommended that the retaliation claim against it be dismissed because there were no allegations that Kroll was aware of any protected activity undertaken by Mr. Spindel. *Id.* at 23–24.

Typically, the next step in the procedural history would be the filing of the parties' objections to the R&R. But in this case, something dramatic happened first. On August 28, 2024, a suggestion of death was filed for Mr. Nowaskey. Dkt. No. 44. No information was provided regarding the cause of his death. The same day, the Court issued an order staying the case to provide Plaintiff the

opportunity to move to substitute Mr. Nowaskey's estate for Mr. Nowaskey. Dkt. No. 46. After

conducting an investigation, Plaintiff's counsel filed a letter stating that he had elected not to

substitute another defendant for Mr. Nowaskey. Dkt. No. 47. As a result, the Court dismissed the

claims against Mr. Nowaskey pursuant to Federal Rule of Civil Procedure 25(a)(1). Dkt. No. 48.

That left Kroll standing alone as the only defendant in this action.

Plaintiff filed objections to the R&R shortly before the suggestion of death was filed. Dkt.

No. 45 (the "Objections"). Plaintiff took issue with several of Judge Willis's recommendations in

the R&R. First, Plaintiff argued that the R&R placed undue emphasis "on a single sentence from

Plaintiff's Amended Complaint—namely, the allegation that the internship opportunity 'never

existed.'" Objections at 1. The Objections characterized the statement as "hyperbolic and

employed for dramatic effect rather than as a literal assertion." *Id.* As a result, the Objections

argued that the R&R overlooked what it described as the "comprehensive context provided in the

Amended Complaint, which clearly establishes the existence of the internship, Plaintiff's

qualifications for the internship and Plaintiff's application for it." *Id.* at 1–2.

Plaintiff's contention that the complaint adequately pleaded the existence of an actual

internship was intended to counter several of Judge Willis's recommendations based on that

contention: the recommendation that the Court find that the impact test was not satisfied; that the

claims for failure to hire be dismissed for lack of a job application; and that the claim for retaliation

against Mr. Nowaskey be dismissed.

Second, the Objections challenged Judge Willis's conclusion that Mr. Nowaskey's conduct

did not adequately plead gender-based discrimination:

> The allegations in the Amended Complaint are that Defendant Nowaskey exposed
> himself to Plaintiff, masturbated in front of Plaintiff, continually pressured and begged
> Plaintiff for sex, asked Plaintiff to have a threesome with a minor, asked Plaintiff to
> be in a relationship, and ultimately denied Plaintiff the internship because he refused
> to comply with his sexual demands. This conduct clearly implicates Plaintiff's sex,
> gender, and sexual orientation and are indicative of invidious discrimination.

10

*Id.* at 3.

Third, the Objections argued that the Court should "reject Judge Willis' position that the NYSHRL and NYCHRL only address conduct 'in the workplace.'" *Id.* at 4.  In support of this argument, Plaintiff pointed to the language of the NYCHRL which expressly bars discrimination in the hiring process.  *Id.*  Plaintiff also pointed to caselaw stating that the statutes prohibit discrimination not only against current, but also "prospective employees."  *Id.*

Fourth, while the Objections accepted Judge Willis's application of New York State's "impact test," Plaintiff argued that Judge Willis erred in holding that a "prospective employee is not entitled to protections under the NYSHRL and NYCHRL if he is sexually harassed and assaulted during the application/interview process."  *Id.*

> The Report suggests that prospective employees may invoke these statutes if they face discriminatory failure-to-hire decisions but not if they are subjected to sexual harassment or assault during the application process—a contradiction that is neither legally nor logically consistent.  Given the clear legal precedent and the inconsistencies in the Report's reasoning, Your Honor should reject its recommendations concerning the non-application of the NYSHRL and NYCHRL with respect to Plaintiff's hostile work environment and *quid pro quo* sexual harassment claims.

*Id.* at 5.

The Objections expressly did not object to "Judge Willis' Report and Recommendation regarding his NYSHRL and NYCHRL retaliation claims against Defendant Kroll."  *Id.* at 3 n.1.

Kroll's response to Plaintiff's objections was filed after the Court dismissed Mr. Nowaskey from the case.  Dkt. No. 50 (the "Response").  As a result, it only addressed the objections that directly pertained to Plaintiff's claims against Kroll.  Kroll supported the R&R's conclusion that the complaint did not adequately plead the existence of an actual job in New York to which Mr. Spindel applied.  Response at 2, 4–5.  As a result, Kroll argued that the R&R had properly concluded that this case does not have a sufficient "impact" on New York to support Mr. Spindel's claims under the NYSHRL and the NYCHRL.  *Id.* at 2.  For the same reasons, Kroll argued that it could not be

11

held liable for failing to hire Mr. Spindel. *Id.* at 4–5. Kroll also argued that Judge Willis correctly held that because Kroll never employed Plaintiff, "his claims predicated on the existence of an employment relationship, including his hostile work environment claim, fail as a matter of law." *Id.* at 3.

## III.   LEGAL STANDARD

### A.   Standard of Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

The Court reviews for clear error those parts of the report and recommendation to which no party has properly objected. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1). When a party lodges a proper objection, the Court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Nambiar*, 158 F.4th at 358–59. A proper objection is both timely and specific, meaning it must have "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Nambiar*, 158 F.4th at 359 (citation omitted). "Merely referring the court to previously filed papers or arguments does not constitute an adequate objection." *Id.* (quoting *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)).

"When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Id.* at 361. But objections that are "nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition" warrant only

clear-error review.  *Id.* (quoting *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022)).

Finally, a "proper objection generally may not raise new arguments not previously made before the magistrate judge."  *Id.* at 359; *accord Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." (citation omitted)).

### B.  Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  To determine plausibility, courts follow a "two-pronged approach."  *Iqbal*, 556 U.S. at 679.  "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted).  Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

### IV.    DISCUSSION[3]

The Court has reviewed for clear error the portions of the R&R to which neither party objected and reviewed *de novo* the portions of the R&R to which Plaintiff objected.  For purposes of its evaluation of the R&R, the Court treats Plaintiff's Objections as sufficiently precise to merit *de*

---

[3] The Court does not discuss Plaintiff's Objections in the same order in which they are made in Plaintiff's brief.

13

*novo* review.  For the reasons that follow, the Court finds no clear error in the portions of the R&R that were not the subject of objections, adopts the R&R's recommendations in part, and, like the R&R, concludes that Plaintiff's claims against Kroll must be dismissed.

### A.  Clear Error Review

The Court finds no clear error in Judge Willis's conclusions to which neither party objected. First, neither party objected to the legal standard applied by Judge Willis with respect to the application of New York's "impact test."  In particular, neither party objected to her reasoning that the test required that Plaintiff plead the existence of an "actual" job in New York.  Second, neither party objected to the pleading standard applied by Judge Willis with respect to Plaintiff's failure to hire claims under the NYSHRL and the NYCHRL.  Third, neither party objected to Judge Willis's conclusion that because Mr. Spindel did not formally apply for an internship, he could only make out a failure to hire claim if he pleaded that he applied through an informal process which Kroll endorsed.  And, fourth, neither party objected to Judge Willis's recommendation that Plaintiff's retaliation claims against Kroll be dismissed.

Finding no clear error in these recommendations, the Court adopts Judge Willis's recommendation that Plaintiff's claim for retaliation against Kroll be dismissed.  For purposes of this opinion, the Court also adopts the R&R's articulation of the legal standard regarding the application of the "impact test," the pleading standard for a failure to hire claim, and the conclusion that Plaintiff could only make out a failure to hire claim against Kroll if he pleaded that he had informally applied through a process endorsed by the company.[4]

---

[4] Plaintiff argues that the "Report suggests that prospective employees may invoke these statutes if they face discriminatory failure-to-hire decisions but not if they are subjected to sexual harassment or assault during the application process—a contradiction that is neither legally nor logically consistent."  Objections at 5.  The Court does not understand that this objection relates to Judge Willis's application of the "impact test."  As described further below, the Court is not adopting the R&R's recommendation that the Court find that the NYSHRL and the NYCHRL do not apply to applicants during the interview process because the statutes only protect current employees.

### B.  Plaintiff's Objections

#### i.  The Complaint Does Not Plead that an Actual Internship Existed

Plaintiff has not adequately pleaded that the internship for which he applied was an actual position.  In his complaint, Mr. Spindel expressly pleaded that the internship "never existed."  FAC ¶ 115.  The Court accepts that well-pleaded fact as true.

In his Objections, Plaintiff now asks the Court to discredit that allegation as mere "hyperbole."  But the complaint is replete with allegations consistent with Mr. Spindel's statement that the internship did not exist and that instead, Mr. Nowaskey "exploited his position to manipulate and solicit sexual acts from an impressionable, twenty-one year-old college student."  *Id.*  Mr. Spindel alleged that Mr. Nowaskey "purported" to have hiring authority at Kroll immediately before masturbating in front of him.  *Id.* ¶¶ 33–34.  Mr. Spindel alleged that the invitation to New York for interviews for the putative internship occurred because Mr. Nowaskey was "fixated on luring Plaintiff to his home for sex," not because of the existence of interviews for an actual job.  *Id.* ¶ 42.  Mr. Spindel recognized the "red flags" in Mr. Nowaskey's assertion that there were two interviews scheduled two weeks apart so that he would have to stay with Mr. Nowaskey in Connecticut for at least two weeks.  *Id.* ¶¶ 43–44.  Mr. Nowaskey told Mr. Spindel that he would forward his resume as a "hiring formality."  *Id.* ¶ 46.  But Mr. Spindel alleged that he was promptly told that the job was contingent on his willingness to have sex with Mr. Nowaskey.  *Id.* ¶ 47.

To support the argument that the job existed, the Objections highlight the allegation in the complaint that Mr. Nowaskey told Mr. Spindel that "[y]our resume just got the rubber stamp from HR."  Objections at 2; FAC ¶ 55.  The Objections argue that the only reasonable inference to be deduced from that fact was that there was a position for which Mr. Spindel was qualified and had applied.  But in making this argument, the Objections ignore the statement in the following paragraph of the complaint:  "*However, this was false*, and another deliberate act to dangle the

15

internship opportunity in front of Plaintiff in exchange for sex . . . ." *Id.* ¶ 56 (emphasis added).  If Mr. Nowaskey's statement that Kroll's HR approved Plaintiff's resume was false, as Plaintiff expressly pleads, it does not support the inference that the job Mr. Nowaskey used to lure Plaintiff existed.  Instead, it supports the complaint's allegation that the job "never existed."[5]

The complaint does not plausibly allege that there was an actual job to which Plaintiff applied.  Not only does the complaint expressly plead that the job "never existed," but the entire narrative of the events painted in the complaint is one in which Mr. Nowaskey misled Plaintiff and leveraged his lies for sex.  Therefore, the Court does not discount the complaint's allegation that the job "never existed" as mere hyperbole, as Plaintiff now argues.  The Court accepts the pleaded facts in the complaint as true:  the job "never existed."

Because the complaint does not allege the existence of an actual job in New York for which Plaintiff applied or any other intersection with New York State, the "impact test" is not satisfied.  Plaintiff was not a resident of New York.  He was not employed in New York City or State.  And he did not proactively seek "an *actual* city- or state-based job opportunity." *Syeed*, 41 N.Y.3d at 449 (emphasis added).  As a result, Plaintiff cannot pursue his claims under either the NYSHRL or the NYCHRL.  Therefore, all of Plaintiff's claims against Kroll must be dismissed.  While this conclusion resolves the motion to dismiss, the Court addresses some of the other arguments raised by the parties regarding the sufficiency of Plaintiff's claims against Kroll.

---

[5] This example is illustrative, not exhaustive.  The complaint is rife with other allegations that undermine Plaintiff's attempt to disclaim his express allegation that the internship "never existed."  For example, in paragraph 92, Plaintiff writes "that he was skeptical about whether the internship was real."  FAC ¶ 92.  "In turn, Defendant NOWASKEY told Plaintiff that the internship was 'definite' and that even if he and Plaintiff 'did not work out,' 'nothing would change.'" *Id.*  The following paragraph of the complaint undermines the reality of Mr. Nowaskey's statement:  "*In reality*, Defendant NOWASKEY wanted to keep Plaintiff in his home, as a potential sex object, and used his position at Defendant KROLL and/or Duff & Phelps to manipulate him into staying within this increasingly abusive situation." *Id.* ¶ 93 (emphasis added).  Similarly, as flagged above, Plaintiff describes the "internship" in scare quotes, signaling that it was not real, as does his description of it as a "purported internship," and Mr. Nowaskey's "purported" hiring authority. *Id.* ¶¶ 33, 52, 110.

### ii.   Failure to Hire Claim

The Court adopts Judge Willis's conclusion that Plaintiff's failure to hire claim was not adequately pleaded.  The failure to hire claim is inadequately pleaded for several reasons.  First and foremost, Plaintiff did not plausibly plead the existence of an internship for which he applied.  "If there was no internship, there can be no failure to hire."  R&R at 12.  As a corollary, Plaintiff did not plead that he formally applied for any job offered by Kroll.  Plaintiff did not object to Judge Willis's conclusion that because he did not formally apply for an internship, he could only make out a failure to hire claim if he pleaded that he applied through an informal process which Kroll endorsed.

Plaintiff did not adequately plead that he applied through an informal process endorsed by Kroll.  That is, again, because Plaintiff pleaded that the job did not exist.  In his Objections, Plaintiff pointed to a series of statements by Mr. Nowaskey, assuring Plaintiff that the internship was "definite" and that his resume had received a "rubber stamp from HR."  Objections at 2.  However, Plaintiff expressly pleaded that Mr. Nowaskey's statement about the approval of his resume by Kroll's HR department was "false."  FAC ¶ 56.  The facts pleaded in the complaint do not support the inference that Kroll endorsed Tinder and the kind of exploitative acts that Mr. Nowaskey requested as an alternative, quite informal way to apply for a job.  *See, e.g.*, *id.* ¶ 117 ("Plaintiff's prospective employment at Defendant KROLL and/or Duff & Phelps was conditioned upon his willingness to engage in a romantic and/or sexual relationship with Defendant NOWASKEY.").

The Court also adopts Judge Willis's recommendation that the Court find that Plaintiff did not adequately plead that he was qualified for a position at Kroll.  Plaintiff pleaded no facts about his background or experience other than the fact that he was a college student, who "was willing to do whatever it took to secure a prestigious internship in the banking and finance industry."  *Id.* ¶ 53.

Plaintiff asks the Court to infer that he was qualified based on Mr. Nowaskey's praise.  In particular, Plaintiff points to Mr. Nowaskey's statement to Mr. Spindel that he was "[n]ot doing

17

[this] out of charity or sexual attraction.  You impress me." *Id.* ¶ 48.  This allegation does not support the weight that Plaintiff now places on it, because again, he takes the allegation out of context.  The prior paragraph of the complaint states that Plaintiff understood the communication to "ma[ke] it clear . . . that Plaintiff's potential job opportunity was contingent upon his willingness to engage in sexual intercourse with him"—not that Mr. Nowaskey meant what he said.  *Id.* ¶ 47.  That allegation in the complaint does not support the inference that Mr. Spindel was qualified for an internship at Kroll.

### iii.  Sexual Harassment Claims

The Court does not adopt the R&R's conclusion that Plaintiff cannot pursue a discrimination claim against Kroll because he was not an employee of the company.  The R&R recommended that the Court find that Plaintiff could not pursue a claim under the NYSHRL and the NYCHRL because "'the statutes still only refer to an employee' when addressing conduct in the workplace."  R&R at 24 (quoting *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013)).  To reach that conclusion, the R&R relied exclusively on the quote from the opinion in *Wang*.

The Court cannot adopt this analysis of the requirements of the NYSHRL and the NYCHRL because the statutes were amended in 2019 and 2020, respectively, to cover persons other than employees, including interns.  *See, e.g.*, *Franklin v. Whole Foods Mkt. Grp.*, 2022 WL 256460, at *3 n.4 (S.D.N.Y. Jan. 26, 2022).  *Wang* predated those amendments to the statutes.  Neither the parties' briefing nor the R&R addressed the impact of those amendments.[6]  The Court therefore declines to adopt that portion of the R&R's analysis.

---

[6] In its Response, Kroll cites to a recent unpublished decision by the Second Circuit to support Judge Willis's recommendation.  *See* Response at 3 (quoting *Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, No. 22-808, 2023 WL 2469824, at *4 (2d Cir. Mar. 13, 2023)).  While *Gerzhgorin* post-dates the amendments to the NYSHRL and NYCHRL, the text upon which Kroll relies describes the legal standard for a claim under Title VII, which is different than that for a claim under the state and city laws.

The Court declines to adopt the R&R's conclusion that Kroll can be held liable under the NYSHRL for an unlawful employment practice by Mr. Nowaskey that Kroll did not condone. Under the NYSHRL, "an employer is never strictly liable for the conduct of employees, even if the harassing employee is a Plaintiff's supervisor." *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015). Instead, a "private employer . . . [can]not be held liable under the State HRL for an employee's discriminatory act 'unless the employer became a party to it by encouraging, condoning, or approving it.'" *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 455 (2021) (quoting *Totem Taxi, Inc. v. N.Y. State Hum. Rts. Appeal Bd.*, 65 N.Y.2d 300, 305 (1985)); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311–12 (2004) (applying this rule to find that because the defendant employer did not know of "the use of racial slurs and insults by a supervisor," it could not be held liable under the NYSHRL for a hostile work environment).

The R&R recognized this rule. R&R at 16. However, the R&R then quoted a recent district court opinion for the proposition, that "where it is an upper-level supervisor who is responsible for the discrimination, liability is automatically imputed to the corporation, as the involvement of an upper-level supervisor establishes the corporation's acquiescence or condonation." *Castillo*, 2023 WL 6664552, at *6. To state this rule, the court in *Castillo* relied solely on a 1996 decision from the 4th Department: *Father Belle Community Center v. New York State Division of Human Rights on Complaint of King*, 642 N.Y.S.2d 739, 746 (4th Dep't 1996). The Court does not believe that *Father Belle* supports the statement in *Castillo* that that a plaintiff need not plead condonation by the employer whenever the responsible employee "is an upper-level supervisor."

The court in *Father Belle* asked the question "whether New York's rule against vicarious liability in discrimination cases bars recovery against an employer where, as here, the harasser is its *highest ranking employee*." *Id.* at 746 (emphasis added). The Fourth Department decided that it does not. The court reasoned that:

> [T]here is no opportunity to make a complaint to upper-level management where the harasser is the *highest ranking supervisor*. Moreover, requiring the complainant in that instance to notify the corporate directors is unfair and impractical. Corporate directors typically are not present at the workplace and necessarily delegate their responsibilities to upper-level managerial employees. Thus, it would be unrealistic to require the complainant to "go over the head" of an abusive *chief executive*.

*Id.* at 747 (emphasis added). *Father Belle* supports the conclusion that a plaintiff need not show condonation on the part of a company when he is suing the company's chief executive officer.

The Court in *Castillo* extrapolated from *Father Belle* a rule that a plaintiff need not show condonation whenever the conduct is perpetrated by any "upper-level supervisor." This is a much broader carve-out from the limitation on vicarious liability that was considered in *Father Belle*, which was limited to a company's "highest ranking supervisor." *Castillo*'s broad carve-out from New York's rule limiting vicarious liability under the NYSHRL has no other support. The Court does not adopt the broad carve-out from the limitation on vicarious liability under the NYSHRL announced by the court in *Castillo* and then adopted by the R&R.

Mr. Nowaskey is alleged to have been what might be understood to be an "upper-level" manager at Kroll, but he was not the company's highest-ranking supervisor, or even a member of the company's C-suite. Therefore, the Court does not adopt the R&R's conclusion that Kroll can be held liable for Mr. Nowaskey's misconduct under the NYSHRL without the need for proof of Kroll's condonation or approval.

The Court also does not adopt the R&R's recommendation that the Court find that Kroll is strictly liable for Mr. Nowaskey's conduct under the NYCHRL. The R&R properly described the NYCHRL as imposing strict liability on employers. R&R at 20. However, should this issue be properly presented to the Court, the Court would benefit from further briefing from the parties regarding whether Mr. Nowaskey's conduct, as alleged, falls within the scope of the statute or if it is not covered because Mr. Nowaskey's conduct arguably did not take place in the context of his employment, while acting as a supervisor or manager.

20

The legislative history of the NYCHRL highlights a question that the parties did not fully brief in connection with this motion to dismiss:  whether an employer can be held strictly liable under the NYCHRL for the misconduct of a manager or supervisor when the misconduct is committed "off the clock"—in the manager's personal capacity, rather than in his capacity as a supervisor or manager.  The legislative history of the NYCHRL described the City Council's intention to impose strict liability under the NYCHRL "in [the] employment context."  In *Zakrzewska v. New School*, the New York Court of Appeals described the legislative history of the NYCHRL as follows:

> In a side-by-side comparison of then-current law with the proposed new law, the Report of the Council's Committee on General Welfare describes new section 8–107(13) as providing for
>
>> "*[s]trict liability in employment context for acts of managers and supervisors;* also liability in employment context for acts of co-workers where employer knew of act and failed to take prompt and effective remedial action or should have known and had not exercised reasonable diligence to prevent. . . ." (1991 N.Y. City Legis. Ann., at 187 [emphases added]).

*Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 480 (2010).

Should this issue be presented to the Court again, the Court expects to request additional briefing regarding whether the NYCHRL's strict liability scheme applies to conduct by managers and supervisors that is not committed in their capacity as such—as here, where the alleged misconduct happened far from the workplace, and the person at whom the alleged discrimination was targeted was not supervised or managed by the malefactor.  Because the Court would benefit from additional briefing on this question, the Court does not now adopt the R&R's conclusion that Kroll is vicariously liable for Mr. Nowaskey's conduct because of his role at the company.

## V.    Leave to Amend

The Court grants Plaintiff leave to amend the complaint to cure the deficiencies identified above.  It is the "usual practice" upon dismissing a complaint "to allow leave to replead."  *Cortec*

*Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

The Court cannot conclude that Plaintiff's failure to hire and discrimination claims against Kroll are futile. Therefore, the Court grants him leave to amend the complaint to cure the deficiencies identified here and in the R&R regarding those claims. Any amended complaint must be filed within 30 days of the date of this opinion. Plaintiff did not seek leave to amend to cure the deficiencies with respect to his retaliation claim against Kroll, therefore that claim is dismissed with prejudice.

## VI.     CONCLUSION

For the foregoing reasons, the Court adopts the R&R in part. Accordingly, Defendant's motion to dismiss is GRANTED.

Plaintiff's claims against Kroll for failure to hire and discrimination under the NYSHRL and the NYCHRL are dismissed without prejudice and with leave to amend. Plaintiff's claim against Kroll for retaliation under the NYSHRL and the NYCHRL is dismissed with prejudice and without leave to amend.

SO ORDERED.

Dated:  February 27, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

22