USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 10/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SPINDEL,

Plaintiff,

-v-

KROLL, LLC,

Defendant.

1:23-cv-9961-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Plaintiff David Spindel matched with Kevin Nowaskey on Tinder. Mr. Nowaskey was an executive at Defendant Kroll, LLC ("Kroll"). Mr. Nowaskey used the prospect of a lucrative summer internship with Kroll as a lure to press Mr. Spindel for sex. In response to an earlier version of Plaintiff's complaint, the Court dismissed Plaintiff's claims against Kroll because Plaintiff had pleaded that the internship at Kroll "never existed." Instead, Plaintiff had pleaded that the job was a fiction used by Mr. Nowaskey to exploit him. The Court dismissed Plaintiff's claims against Kroll with leave to amend. Plaintiff did so.

In his amended complaint, Plaintiff's account of events has changed somewhat from his prior complaint. He now alleges that he was using Tinder "platonically" to find employment. He has removed his prior allegation that the internship at Kroll "never existed." And he has bolstered his allegations to show that Mr. Nowaskey had the authority to hire interns through an informal referral program endorsed by Defendant. Those allegations include an email from a manager in Defendant's human resources department telling Plaintiff that she was happy to consider him for an internship after receiving his resume from Mr. Nowaskey.

Defendant moved to dismiss the amended complaint. Defendant argues that the substantial

changes in Plaintiff's allegations are barred by the doctrine of judicial estoppel. And it argues that Plaintiff has failed to make out a failure to hire claim against it because Plaintiff did not formally apply for a job, and he has not adequately pleaded that Kroll endorsed the informal application process that he used.

Judicial estoppel does not prevent Plaintiff from amending the facts pleaded in his complaint. And because the new facts pleaded in his complaint show that Plaintiff applied for an internship through an informal process acknowledged by Kroll's own human resources department, Defendant's motion to dismiss Plaintiff's failure to hire claim under the New York City Human Rights Law is DENIED. Defendant's motion to dismiss Plaintiff's claim under the New York State Human Rights Law is granted, however, because Defendant is not vicariously liable for Mr. Nowaskey's conduct, which was unknown to it. Therefore, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Facts[1]

David Spindel was a junior in college when this case began to unspool. SAC ¶ 21. Mr. Spindel was gay. *Id.* ¶ 5. Mr. Spindel matched with Kevin Nowaskey on Tinder, the online dating application. *Id.* ¶ 20. At the time, Mr. Spindel was "in pursuit of a finance-related college internship." *Id.* ¶ 21. In this iteration of the complaint, Mr. Spindel alleges that he was using Tinder "to connect socially and platonically with people in New York while exploring internship and career opportunities there." *Id.* ¶ 22.[2] He also now alleges that he "was not using the platform to solicit sexual opportunities related to employment." *Id.* ¶ 23.

[1] The facts are taken from the Second Amended Complaint, Dkt. No. 55 ("SAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] In his prior complaint, Mr. Spindel did not allege that he was using Tinder platonically.

Shortly after he matched with Mr. Nowaskey, Mr. Spindel discovered that Mr. Nowaskey's profile stated that Mr. Nowaskey worked in "investment banking" in the New York City area. *Id.* ¶ 24. So, Mr. Spindel started communicating with Mr. Nowaskey using Tinder's platform. *Id.* ¶ 25. Mr. Spindel told Mr. Nowaskey that "he was a college student and was interested in working in investment banking after graduation." *Id.* ¶ 26.

"Shortly thereafter, NOWASKEY began leveraging Plaintiff's interest in pursuing a career in finance to initiate communications that blended professional opportunity with personal and sexual expectations." *Id.* ¶ 27. Mr. Nowaskey texted Plaintiff, telling him that he was also "gay lol," and described one "hack/tip for you-my 'type' is clean shaven/smooth, athletic and [masculine]. Not sure if that describes you or not, but I thought I'd be transparent." *Id.* ¶ 29. Mr. Nowaskey, "acting in his capacity as a Director at Defendant Kroll," "invited Plaintiff to interview with him via Zoom." *Id.* ¶ 32.

Mr. Spindel and Mr. Nowaskey communicated by Zoom. *Id.* ¶ 33. "[T]he conversation began formally and professionally" and Mr. Nowaskey "represented that he had hiring authority at Defendant KROLL and/or Duff & Phelps," but "out of nowhere," Mr. Nowaskey began to masturbate in front of Mr. Spindel. *Id.* ¶¶ 33–35. Mr. Nowaskey asked Mr. Spindel to show him his penis. *Id.* ¶ 36. Mr. Spindel, uncomfortable "given that his mother was home and in a nearby room," declined to do so and instead guided the conversation "back to banking and finance." *Id.* ¶¶ 37–38. "Shortly after, Defendant NOWASKEY told Plaintiff that he was impressed with him, and offered Plaintiff an internship at Defendant KROLL and/or Duff & Phelps' New York office." *Id.* ¶ 39. "Plaintiff accepted the offer." *Id.* ¶ 40.

After that night, "fixated on luring Plaintiff to his home for sex," Mr. Nowaskey insisted that Mr. Spindel travel to New York "so that he could attend two in-person interviews with other members of Defendant KROLL and/or Duff & Phelps' upper management." *Id.* ¶ 44. Mr.

Nowaskey told Mr. Spindel that the interviews would be two weeks apart, and that, in the intervening period, Mr. Spindel could stay with Mr. Nowaskey at his home in Greenwich, Connecticut. *Id.* ¶ 45. Plaintiff alleges that these actions "were undertaken as part of Defendant KROLL[']s . . . office hiring and recruitment process for internship candidates." *Id.* ¶ 46.

Mr. Spindel "felt as though the situation had some 'red flags,'" but he dismissed his concerns and travelled to Connecticut. *Id.* ¶ 48. Mr. Nowaskey told Mr. Spindel that he "intended to forward Plaintiff's resume to HR as a 'hiring formality.'" *Id.* ¶ 51. Mr. Nowaskey discussed compensation for the job. *Id.* "However, the next day, Defendant NOWASKEY made it clear to Plaintiff that Plaintiff's potential job opportunity was contingent upon his willingness to engage in sexual intercourse with him." *Id.* ¶ 52. In one of his text messages, Mr. Nowaskey wrote:

> Not doing [this] out of charity or sexual attraction. You impress me. [However], we're going to need to separate the professional and personal aspects of our lives very effectively … It's not going to be easy… at work, I'm straight. At work, you're straight …

*Id.* ¶ 53.

Mr. Nowaskey and Mr. Spindel exchanged naked pictures before Mr. Spindel travelled to spend time with Mr. Nowaskey. *Id.* ¶¶ 55–56. Mr. Spindel sent Mr. Nowaskey photographs of his penis "to keep the internship opportunity intact." *Id.* ¶ 56. Mr. Nowaskey sent Mr. Spindel training materials for his purported interview. *Id.* ¶ 58. Eventually, Mr. Spindel travelled to New York "in reliance on NOWASKEY's representations that it was part of the interview and hiring process." *Id.* ¶ 62.

"Excited about the prospect of having successfully manipulated a college student to live with him, NOWASKEY then began to pepper Plaintiff with professional promises (via text message) . . . ." *Id.* ¶ 63. In one message, Mr. Nowaskey told Mr. Spindel: "Your resume just got the rubber stamp from HR and was forwarded to the IBD North America head for final approval." *Id.* ¶ 65

(emphasis omitted).[3] This reinforced Mr. Spindel's belief that "he was being considered for an actual internship opportunity at Defendant KROLL." *Id.* ¶ 66.

Eventually, Mr. Spindel travelled to Connecticut to stay with Mr. Nowaskey. *Id.* ¶ 73. As Mr. Spindel had anticipated, Mr. Nowaskey pressured Mr. Spindel for sex. *Id.* ¶¶ 79–80. "Consequently, feeling powerless and not wanting to squander the internship opportunity, Plaintiff engaged in non-consensual sex with NOWASKEY." *Id.* ¶ 81. As Mr. Nowaskey pursued his advances, Mr. Spindel continued to "'play along' to avoid jeopardizing his potential employment with Defendant KROLL." *Id.* ¶ 84.

Mr. Spindel's stay with Mr. Nowaskey at his home in Connecticut was permeated with sexual pressure. Mr. Spindel was shown a room in which he could do his schoolwork and "prepare for the internship." *Id.* ¶ 82. Mr. Nowaskey asked Mr. Spindel for sex and offered to make Mr. Spindel "his beneficiary"; he also offered to buy him a Range Rover. *Id.* ¶¶ 94–98. Mr. Spindel found Mr. Nowaskey's behavior to be "obsessive, controlling, and erratic." *Id.* ¶ 97. "However, again, Plaintiff felt obligated to acquiesce in order to keep his job prospect with Defendant KROLL and/or Duff & Phelps intact and to see if NOWASKEY's promise of employment would eventually come to fruition." *Id.*

Mr. Spindel and Mr. Nowaskey argued. *Id.* ¶ 103. During the argument, "Plaintiff confronted NOWASKEY on [sic] . . . conditioning the internship on his acquiescence to his sexual demands." *Id.* ¶ 104. "In turn, NOWASKEY told Plaintiff that the internship was 'definite' and that even if he and Plaintiff 'did not work out,' 'nothing would change.'" *Id.* ¶ 105. "In reality, NOWASKEY wanted to keep Plaintiff in his home, as a sex object, and used his position at Defendant KROLL and/or Duff & Phelps to manipulate him into staying within this increasingly abusive situation." *Id.* ¶ 106. Despite his concerns, Mr. Spindel chose to stay with Mr. Nowaskey

[3] In his First Amended Complaint, Plaintiff alleged that this statement "was false." Dkt. No. 7 (the "FAC") ¶ 56.

"in hopes that this dysfunctional scenario would eventually materialize into a job at Defendant KROLL and/or Duff & Phelps." *Id.* ¶ 108.

Meanwhile, Plaintiff alleges, Mr. Nowaskey started the internship nomination process for him at Kroll. *Id.* ¶ 109. Mr. Nowaskey wrote Kroll's talent manager to tell her that a contact in his alumni network had introduced a "potential intern candidate." *Id.* ¶ 110. Mr. Nowaskey told the talent manager that the interview had gone "very well"; he asked that the talent manager reach out to Mr. Spindel over the course of the next week as he "would greatly appreciate hearing a second perspective on him as a potential summer intern in our group . . . I've attached his [resume] for your reference in the event you have some time to reach out." *Id.* ¶ 110. After he connected with another person from Kroll's human resources department, Mr. Nowaskey texted Mr. Spindel that "Lara Benedetto from HR will be reaching out shortly." *Id.* ¶ 113.

After Mr. Spindel rebuffed several more of his requests for sex, Mr. Nowaskey told Mr. Spindel that he had to go home. *Id.* ¶ 122. Nonetheless, shortly thereafter, Kroll's HR department reached out to Mr. Spindel directly about the internship opportunity. Ms. Benedetto wrote to him the following:

> Hi [Plaintiff], I hope this email finds you well and that you're having a great week. I recently received your resume from [NOWASKEY], as I manage intern placements here at [Defendant KROLL and/or Duff & Phelps]. Due to Covid-19 (and waiting on the status of when our offices will be able to reopen,) we have decided to start our summer internship recruitment in January 2021. I would be happy to consider you for our summer intern opportunities and to answer any questions you may have in the meantime. I look forward to staying in touch …

*Id.* ¶ 124. Plaintiff contends that this email provides direct support for his allegation that Defendant "maintained an informal application process through which senior employees, including NOWASKEY, were authorized to identify, screen, and refer prospective intern candidates directly to the Talent Acquisition department for further processing." *Id.* ¶ 125. Plaintiff alleges that Mr. Nowaskey was using this process, and that part of Mr. Nowaskey's role and responsibilities as a

Director at Defendant "included identifying and referring internship candidates." *Id.* ¶¶ 127, 133. "[T]he misconduct at issue was not committed in NOWASKEY's personal capacity; it was the direct instrumentalization of his supervisory authority at Defendant . . . ." *Id.* ¶ 133.

Around December 12, 2020, Mr. Nowaskey "threatened to blacklist [Mr. Spindel] from the entire investment industry if he did not give in to his sexual demands." *Id.* ¶ 135. Just three days later, Mr. Spindel responded to Ms. Benedetto's email, telling her that he was "very excited to apply to [Defendant KROLL]." *Id.* ¶ 136.

"Eventually, on or about December 19, 2020, enough was enough; Plaintiff left NOWASKEY's home and returned to Florida." *Id.* ¶ 139.

Mr. Spindel heard nothing from Mr. Nowaskey or Defendant about the internship in the following weeks. *Id.* ¶ 140. Mr. Spindel again wrote to Ms. Benedetto, his contact in Kroll's human resources organization, "reaching out for information on the [internship] program and to see if there is anything that I can do before it starts." *Id.* ¶ 141. He received no response. *Id.* ¶ 142. So, Mr. Spindel reached out to Mr. Nowaskey "to further inquire about the status of the internship." *Id.* ¶ 143. "However, NOWASKEY now claimed (conveniently) that Plaintiff was not qualified for the internship, despite having never raised concerns about Plaintiff's experience or credentials in the past." *Id.* Mr. Nowaskey also told Mr. Spindel that he had entered into a serious relationship. *Id.* ¶ 144.

"Plaintiff was ultimately never offered an internship at Defendant KROLL and/or Duff & Phelps." *Id.* ¶ 148. In the operative complaint, Plaintiff now alleges that he was a legitimate prospective candidate for Defendant's internship program, and that he was not hired because he refused to "give in to NOWASKEY's sexual demands." *Id.* ¶ 153.

**B. Procedural History**

Plaintiff filed the First Amended Complaint on November 30, 2023, asserting multiple

claims against both Mr. Nowaskey and Kroll for discriminating against him on the basis of his sexual orientation in violation of the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL"). *See generally* FAC. Mr. Spindel also asserted several claims against Mr. Nowaskey alone under Connecticut state law. *Id.*

In February 2024, Mr. Nowaskey and Kroll filed separate motions to dismiss the claims against each of them. Dkt. Nos. 26, 28. Magistrate Judge Jennifer E. Willis, to whom the case is referred, entered a report and recommendation in response to the defendants' motions on August 15, 2024. Dkt. No. 41 (the "R&R"). The R&R recommended that the Court dismiss all of Mr. Spindel's claims against both defendants. The Court adopted the recommendations of the R&R in part and granted Kroll's motion to dismiss.[4] The Court refers the reader to its opinion in *Spindel v. Kroll, LLC* (*Spindel I*), No. 23-CV-9961-GHW-JW, 2026 WL 555653 (S.D.N.Y. Feb. 27, 2026). That opinion summarizes the recommendations of the R&R and the reasoning behind the Court's decision to dismiss Plaintiff's claims in response to Defendant's first motion to dismiss. However, the Court pauses to highlight two aspects of its decision that are particularly pertinent to this motion.

First, the Court granted Kroll's motion in large part because Plaintiff had "not adequately pleaded that the internship for which he applied was an actual position. In [the First Amended Complaint], Mr. Spindel [had] expressly pleaded that the internship 'never existed.'" *Spindel I*, 2026 WL 555653, at *8. Therefore, the Court wrote the following:

> Because the complaint does not allege the existence of an actual job in New York for which Plaintiff applied or any other intersection with New York State, the "impact test" is not satisfied. Plaintiff was not a resident of New York. He was not employed in New York City or State. And he did not proactively seek "an *actual* city- or state-based job opportunity."

[4] Before the Court issued its opinion, Mr. Nowaskey passed away. *See* Dkt. No. 44. His estate was not joined to the action. As a result, the case proceeded against Defendant Kroll alone.

*Id.* at *9 (quoting *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (2024)). Similarly, the Court held that Plaintiff had failed to plead a failure to hire claim, because he had pleaded that no job existed, and, perforce, that he had not applied for a job through an informal process. *Id.* at *10.

To reach this conclusion regarding the pleadings, the Court examined Plaintiff's allegations, which expressly stated that the job "never existed" and contained other allegations inconsistent with the existence of an actual job in New York. As an example, Plaintiff pleaded that Mr. Nowaskey's statement that his resume "just got the rubber stamp from HR" "was false." *Id.* at *9. Plaintiff pleaded that Mr. Nowaskey had invited Plaintiff to his home for sex using the prospect of a job as a lure, not because of the existence of an interview for an actual job. *Id.*

The second point from *Spindel I* that is worthy of particular note here is the two recommendations from the R&R that the Court declined to adopt. The Court did not adopt Judge Willis's conclusion that Kroll could be held liable under the NYSHRL for conduct by Mr. Nowaskey that Kroll did not condone. *Id.* at *10. That was because, the Court explained, "a 'private employer . . . [can]not be held liable under the State HRL for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.'" *Id.* (quoting *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 455 (2021) (internal quotations omitted)).

The Court also did not adopt Judge Willis's recommendation that the Court find Kroll strictly liable under the NYCHRL for Mr. Nowaskey's conduct. *Id.* at *11. The Court informed the parties that should the issue be placed before the Court again, it would benefit from further briefing regarding whether Kroll was strictly liable for Mr. Nowaskey's conduct. The Court requested the parties' views "regarding whether Mr. Nowaskey's conduct, as alleged, falls within the scope of the statute or if it is not covered because Mr. Nowaskey's conduct arguably did not take place in the context of his employment, while acting as a supervisor or manager." *Id.*

In *Spindel I*, the Court granted Plaintiff leave to amend the FAC to cure the deficiencies

identified in the opinion and in the R&R regarding his failure to hire and discrimination claims. *Id.* at *12. As a result, on March 30, 2026, Plaintiff filed his Second Amended Complaint. *See generally* SAC. In it, he asserted claims against Kroll for alleged discrimination on the basis of his sex, gender, and sexual orientation, including failure to hire, in violation of both the NYSHRL and the NYCHRL. SAC ¶¶ 159–67. Many of the allegations in Plaintiff's Second Amended Complaint deviate significantly from the allegations in the prior complaint. Gone are all of the statements by Plaintiff in that complaint that indicated his belief that the internship was a manufactured lure developed by Mr. Nowaskey to entice Plaintiff to have sex with him. Just as two examples from many: the prior allegation that the position "never existed" has been stripped from the Second Amended Complaint, replaced with allegations that it did. And Plaintiff's prior allegation that Mr. Nowaskey's statement that his resume had been passed on to HR "was false" is nowhere to be seen.

On April 27, 2026, Defendant filed a motion to dismiss the claims against it. Dkt. No. 58 ("Mem."). Defendant's motion was quite short—just over eight pages in length. Defendant first argued that the Court should conclude that the doctrine of judicial estoppel prevented Plaintiff from espousing "new allegations that are entirely opposite the allegations in his FAC." *Id.* at 4. Defendant argued that the Court had adopted Plaintiff's prior position that the job did not exist in ruling on the initial motion to dismiss and that Plaintiff should not be permitted to assert what Defendant described as a "contradictory position" in the Second Amended Complaint. *Id.* at 5.

Defendant also argued that Plaintiff's claims were inadequately pleaded. Defendant's motion did not address the aspect of Plaintiff's claim in which he asserted that he was the victim of sexual harassment and direct discrimination by Mr. Nowaskey. Instead, it focused on Plaintiff's failure to hire claim. *Id.* Defendant argued with respect to his NYSHRL claim that Plaintiff "fails to sufficiently allege that he was qualified for an internship and that he applied for the internship through informal or formal channels." *Id.* at 6. Plaintiff's NYCHRL claim fails, Defendant argued,

because Plaintiff "does not allege that he was ever treated worse than other applicants." *Id.*

Plaintiff filed his opposition to the motion on May 11, 2026. Dkt. No. 59 ("Opp."). In it, Plaintiff argued that the doctrine of judicial estoppel did not apply for several reasons: first, because the Second Amended Complaint was not inconsistent with his prior complaint, and second, because the Court had not adopted or reached any findings when ruling on the motion to dismiss. *Id.* at 5. "Accepting the FAC's allegations as true was a requirement under Rule 12(b)(6), not a judicial endorsement. To apply judicial estoppel against an amended pleading that the Court itself invited Plaintiff to file would stretch the doctrine of judicial estoppel far beyond its intended purpose." *Id.*

Plaintiff then responded to Defendant's motion to dismiss his claims under the NYSHRL and the NYCHRL on the basis that he had not adequately pleaded a claim for failure to hire. Plaintiff acknowledged that he had not filed a formal job application. But he argued that his allegations excused that common requirement of failure to hire claims. *Id.* at 6. Plaintiff pointed to the allegations in the complaint to the effect that Kroll "maintained an informal application process through which senior employees were authorized to identify and refer internship candidates directly to Talent Acquisition, and that Defendant Kroll ratified and endorsed this process when its HR personnel accepted Plaintiff's resume and confirmed his candidacy and/or consideration for the summer internship program." *Id.* at 7. These allegations were supported by Plaintiff's direct communications with Ms. Benedetto. *Id.* Plaintiff also argued that he had adequately pleaded that he was qualified for the position based on his communications with Ms. Benedetto.

Finally, Plaintiff argued that the "impact test" was satisfied because he pleaded that he had been denied an actual job opportunity in New York. *Id.* at 8–9. He argued that the conduct of Mr. Nowaskey, a senior executive of Kroll, was properly attributed to his employer.

Defendant filed its reply on May 18, 2026. Dkt. No. 60. Defendant reemphasized its argument for the application of judicial estoppel. *Id.* at 3–4. Defendant also used the opportunity to

distinguish the cases cited by Plaintiff regarding the adequacy of his allegations regarding the failure to hire claim. Defendant did not contest Plaintiff's arguments regarding Plaintiff's satisfaction of the "impact" test. Indeed, throughout the briefing of the motion Defendant never argued that the NYSHRL and NYCHRL did not apply on the facts of the case—only that the claims were inadequately pleaded.

## III. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Iqbal*, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### A. Judicial Estoppel Does Not Bar Consideration of the Second Amended Complaint

Plaintiff's amendments to the complaint are not barred by judicial estoppel. "[J]udicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "The purpose of judicial estoppel 'is to protect the integrity of the judicial process

by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011) (quoting *New Hampshire*, 532 U.S. at 749–50).

Judicial estoppel is an equitable doctrine that "cannot be reduced to a precise formula or test." *Zedner v. United States*, 547 U.S. 489, 504 (2006). "[T]he exact criteria for invoking judicial estoppel will vary based on 'specific factual contexts.'" *BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017) (quoting *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014)). "Generally, 'judicial estoppel will apply if: [A] a party's later position is "clearly inconsistent" with its earlier position; [B] the party's former position has been adopted in some way by the court in the earlier proceeding; and [C] the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.'" *BPP Ill., LLC*, 859 F.3d at 192 (quoting *In re Adelphia Recovery Trust*, 634 F.3d 678, 695–96 (2d Cir. 2011)). "Because the doctrine is primarily concerned with protecting the judicial process, relief is granted only when 'the risk of inconsistent results with its impact on judicial integrity is certain.'" *Republic of Ecuador*, 638 F.3d at 397 (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71–72 (2d Cir. 1997)).

None of these considerations weigh in favor of barring Plaintiff's amended complaint. First, Plaintiff's change in position is not "clearly" inconsistent with his prior position. Plaintiff's *volte-face* in his position regarding the existence of the internship between the first and second amended complaints is striking. Plaintiff has arguably changed his theory of the case from one in which Mr. Nowaskey invented the prospect of a non-existent internship for Plaintiff as a fantastical lure, to one in which a true internship existed for which Mr. Nowaskey was authorized to interview and hire. Plaintiff explains his change of position by categorizing the statements in his prior complaint to the effect that the internship "never existed" as "hyperbole." On this record, the Court cannot determine whether the change in Plaintiff's presentation of the facts is the result of his counsel's

choice of words to describe the facts, rather than a change in the facts themselves. Therefore, the change is not "clearly" inconsistent with Plaintiff's prior position.

The second requirement for the application of judicial estoppel is also not satisfied. The Court never adopted that the internship "never existed" in dismissing Plaintiff's First Amended Complaint. "The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679); *see also Spindel I*, 2026 WL 555653, at *7. As required, the Court merely "accept[ed] that well-pleaded fact [that the internship never existed] as true." *Spindel I*, 2026 WL 555653, at *8. The Court did not adopt it.

The third requirement for the application of judicial estoppel is also not satisfied. Plaintiff's amended complaint does not give him an "unfair advantage against the party seeking estoppel," and he should not be discouraged from exercising his right to amend his complaint. *See* Fed. R. Civ. P. 15. The Court granted Plaintiff leave to amend the complaint. *See Spindel I*, 2026 WL 555653, at *12. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). It is not "unfair" for Plaintiff to take advantage of the right to amend his complaint, because the Federal Rules of Civil Procedure and the Court's prior opinion in *Spindel I* expressly allowed Plaintiff to exercise this right. Judge Marrero considered a similar issue in *Streit v. Bushnell*, 424 F. Supp. 2d 633 (S.D.N.Y. 2006). As he wrote there:

> It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings. Contrary to such a result, Rule 8([d]) explicitly permits litigants, even within the same pleadings, to "state as many separate claims or defenses as the party has *regardless of consistency*." Fed. R. Civ. P. 8([d]) (emphasis added). And Rule 15, after authorizing amendments of pleadings as-of-right within a specified period, provides for amendments with permission of the court and instructs that

"leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

*Streit*, 424 F. Supp. 2d at 640 n.4 (reference to rule corrected).

The Court does not believe that accepting the amended complaint threatens judicial integrity. While the Second Circuit has not ruled on the applicability of judicial estoppel to an amendment to a complaint as of right under Rule 15(a)(1) of the Federal Rules of Civil Procedure, both circuit courts of appeals that have considered the issue have concluded that it does not. The Eleventh Circuit addressed this issue in *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635 (11th Cir. 2019). The Eleventh Circuit held that "[i]t is at odds with the purpose and practices of the federal district courts to dismiss a plaintiff's claim wholesale because of inconsistencies in pleadings. In fact, we explicitly permit litigants to assert inconsistent positions when pleading their case." *Id.* at 647 (citing Fed. R. Civ. P. 8(d)(3)). "Presuming that the claim at issue is meritorious and in compliance with Rule 11, permitting a district court to strike a claim merely because of inconsistencies in the pleadings would be a dangerous precedent to set." *Id.*

The Eleventh Circuit reasoned that such a rule "would dissuade parties from amending their pleadings for fear of jeopardizing the merits of their entire claim. This would be contrary to the federal procedural rules, which liberally permit parties to amend their pleadings." *Id.* "We want parties to challenge the authenticity and credibility of their adversaries. To instead apply judicial estoppel under the circumstances presented here would be to allow inconsistencies to swallow up potentially meritorious claims and dissuade the adversary process." *Id.* at 648. The First Circuit has reached a similar conclusion. *See InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003) ("We would not want to institute a rule that unduly inhibits a plaintiff from appropriately adjusting its complaint either to correct errors or to accommodate facts learned during pretrial discovery.").

Against this backdrop, it is perhaps not unsurprising that Defendant cites no case that has applied judicial estoppel in the way that it asks the Court to do here. Defendant's argument is full of

vinegar provoked by Plaintiff's change in position, but the law does not support the remedy Defendant seeks. Still, the law establishes other boundaries on Plaintiff's ability to change his position in this way. First, of course, is Fed. R. Civ. P. 11, which requires that counsel certify that factual contentions contained in a complaint "have evidentiary support." Fed. R. Civ. P. 11(b)(3). Second, Plaintiff can be confronted with, and cross-examined on the basis of, his earlier pleadings. *See, e.g.*, *Barris v. Hamilton*, No. 96 CIV. 9541, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999) ("While there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading, the more usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course." (citation omitted)).

Defendant's contention that the Second Amended Complaint should be disregarded because of judicial estoppel is misguided. "Presuming that the claim at issue is meritorious and in compliance with Rule 11, permitting a district court to strike a claim merely because of inconsistencies in the pleadings would be a dangerous precedent to set." *Smith*, 940 F.3d at 647.

**B. Plaintiff's Claim Under The NYSHRL Is Inadequately Pleaded Because Plaintiff Does Not Plausibly Allege That Defendant Condoned Mr. Nowaskey's Conduct**

Plaintiff has not adequately pleaded his claim against Defendant under the NYSHRL because he does not plausibly plead that Defendant was aware of—much less approved or condoned—Mr. Nowaskey's discriminatory acts. Under the NYSHRL, "an employer is never strictly liable for the conduct of employees, even if the harassing employee is a Plaintiff's supervisor." *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015). Instead, a "private employer . . . [can]not be held liable under the State HRL for an employee's discriminatory act 'unless the employer became a party to it by encouraging, condoning, or approving it.'" *Doe*, 36 N.Y.3d at 455 (quoting *Totem Taxi v. N.Y. State Hum. Rts. Appeal Bd.*, 65 N.Y.2d 300, 305 (1985)); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311–12 (2004) (applying this rule to find that

because the defendant employer did not know of "the use of racial slurs and insults by a supervisor," it could not be held liable under the NYSHRL for a hostile work environment).

Plaintiff does not allege that Defendant was aware of any of the misconduct perpetrated by Mr. Nowaskey. None of the communications between Mr. Nowaskey and Defendant or Plaintiff and Defendant reveal anything about Mr. Nowaskey's abusive conduct. There is not so much as an allegation that Defendant was aware of either Mr. Nowaskey's or Plaintiff's sexual orientation. To the contrary, the complaint alleges that Mr. Nowaskey told Plaintiff that Defendant was unaware of Mr. Nowaskey's sexual orientation and that the pair would need to keep their relationship a secret. *See* SAC ¶ 53 (quoting a text from Mr. Nowaskey stating that "we're going to need to separate the professional and personal aspects of our lives very effectively … It's not going to be easy… at work, I'm straight. At work, you're straight …"). Plaintiff does not plausibly allege that Defendant approved or condoned Mr. Nowaskey's treatment of Plaintiff. Therefore, Plaintiff's claim under the NYSHRL cannot proceed.

**C. Plaintiff's Failure to Hire Claim Under The NYCHRL Is Adequately Pleaded**

As pleaded, Defendant is vicariously liable for Mr. Nowaskey's misconduct. Section 8-107(13)(b)(1) of the NYCHRL, unlike any provision in the NYSHRL, "is a vicarious liability provision which imposes strict liability on an employer—the employer need not have 'participated' in the offending conduct." *Doe*, 36 N.Y.3d at 456. "Accordingly, . . . [the New York Court of Appeals] made clear that the State HRL's minimum culpability standard was irrelevant to assessing whether an employer is liable under this provision of the City HRL." *Id.* The NYCHRL imposes vicarious liability on employers in the following circumstances:

> An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
>
> (1) the employee or agent exercised managerial or supervisory responsibility; or

> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>
> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct

N.Y.C. Admin. Code § 8-107(13)(b).

Plaintiff argues that Defendant is liable under the first test—because Mr. Nowaskey "exercised managerial or supervisory responsibility." Opp. at 9. The Second Amended Complaint alleges that Mr. Nowaskey had a senior role as a Director at the company and that his role "included identifying and referring internship candidates." SAC ¶¶ 32, 127, 133. The complaint alleges that Mr. Nowaskey represented himself to be Plaintiff's future supervisor. *Id.* ¶ 53 ("[I]t's going to be a little weird being *your boss* at first." (emphasis in original)). Defendant elected not to argue that Mr. Nowaskey was not a supervisor or manager for whose acts Defendant bears vicarious liability.[5] Therefore, the Court accepts that Plaintiff has adequately pleaded that Defendant is vicariously liable for Mr. Nowaskey's conduct as a manager or supervisor at Defendant.

Plaintiff's failure to hire claim under the NYCHRL is adequately pleaded. The NYCHRL makes it unlawful for "an employer or an employee or agent thereof" to refuse to hire or employ a prospective employee on the basis of his gender identity or sexual orientation. *See* N.Y.C. Admin. Code § 8-107(1)(a)(2). "To survive a motion to dismiss, plaintiffs asserting discrimination under the NYCHRL must plead facts sufficient to support an inference that they have 'been treated less well at

---

[5] As noted above, the Court invited the parties to submit additional briefing on the question of "whether the NYCHRL's strict liability scheme applies to conduct by managers and supervisors that is not committed in their capacity as such—as here, where the alleged misconduct happened far from the workplace, and the person at whom the alleged discrimination was targeted was not supervised or managed by the malefactor." *Spindel I*, 2026 WL 555653, at *12. Neither party did so. As a result, the Court understands Defendant to have conceded that it is vicariously responsible for Mr. Nowaskey's conduct.

least in part because of a protected trait.'" *Jablonski v. Special Couns., Inc.*, No. 16-CV-5243, 2017 WL 4342120, at *5 (S.D.N.Y. Sept. 28, 2017) (emphasis omitted), *on reconsideration in part*, No. 16-CV-05243, 2018 WL 3979591 (S.D.N.Y. Aug. 20, 2018) (quoting *Bell v. McRoberts Protective Agency*, 15-CV-0963, 2016 WL 1688786, at *4 (S.D.N.Y. Apr. 25, 2016)).

To make out a failure-to-hire claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), a plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite being qualified; and (4) after this rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018).[6] "Of course, an essential element of a failure to hire claim is that a plaintiff allege that she applied for a specific position and was rejected." *Id.* (internal quotations omitted). "But while a general request for employment is insufficient, a formal application is not always required." *Id.* at 446 (internal quotation and citation omitted). "In such case, a plaintiff may be deemed to have applied for an open position if she pleads that '(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) she attempted to apply for it through informal procedures endorsed by the employer.'" *Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004)).

Plaintiff's allegations in the Second Amended Complaint satisfy all of these requirements. First, Plaintiff pleads that he is a member of a protected class. SAC ¶ 5 ("Plaintiff is a homosexual male . . . ."). Second, he has adequately pleaded that he was qualified for the job to which he applied. The complaint alleges that Defendant treated Plaintiff as a qualified candidate. Plaintiff

[6] Because both parties apply the pleading standard applicable to a failure to hire claim under Title VII in their briefing, and Plaintiff's claims survive under that standard, which is no more favorable to Plaintiff than the NYCHRL, the Court applies it here. "Under the more liberal NYCHRL, a plaintiff must merely plead facts sufficient to support an inference that [she has] been treated less well at least in part because of a protected trait." *Hughes*, 304 F. Supp. 3d at 445 (internal quotation and citation omitted).

was a college student. Mr. Nowaskey is alleged to have told Plaintiff that, apart from his sexual appeal, "you impress me." *Id.* ¶ 53. But the allegation that takes this across the line is found in Plaintiff's direct communication with Ms. Benedetto of Kroll's human resources department and the manager of its intern placements. She emailed Plaintiff that she "would be happy to consider [Plaintiff] for [Defendant's] summer intern opportunities." *Id.* ¶¶ 111, 124. The allegation that Defendant's human resources department treated Plaintiff as eligible for consideration after reviewing his resume satisfies Plaintiff's burden to plead that he was qualified for the position. *See, e.g.*, *Chau v. Donovan*, 357 F. Supp. 3d 276, 293 (S.D.N.Y. 2019) (finding that the plaintiff had sufficiently pleaded that she was qualified for the position to which she attempted to apply where her prospective employer "said as much"); *Hughes*, 304 F. Supp. 3d at 446 (finding qualifications for position adequately pleaded where, among other things, "[the prospective employer] treated [the plaintiff] as a qualified candidate").

The complaint also adequately pleads that Plaintiff applied for a position through informal procedures endorsed by the employer. The complaint alleges that Defendant "maintained an informal application process through which senior employees, including NOWASKEY, were authorized to identify, screen, and refer prospective intern candidates directly to the Talent Acquisition department for further processing." SAC ¶ 125.

Plaintiff's communications with Ms. Benedetto bolster Plaintiff's characterization of Defendant's informal application process. Ms. Benedetto, an HR manager, "manages the campus/intern recruiting process for [Nowaskey's] group" at Defendant. *Id.* ¶ 111. Mr. Nowaskey forwarded Plaintiff's resume to Ms. Benedetto. In response, she wrote Plaintiff that "I recently received your resume from [NOWASKEY], as I manage intern placements here at [Defendant KROLL and/or Duff & Phelps]. . . . I would be happy to consider you for our summer intern opportunities and to answer any questions you may have in the meantime." *Id.* ¶ 124. The

complaint's allegations regarding these communications from Defendant's HR manager readily support the inference that the informal application process for an internship was endorsed by Defendant.

Plaintiff was denied the position. *Id.* ¶ 148 ("Plaintiff was ultimately never offered an internship at Defendant Kroll and/or Duff & Phelps."). And he was denied under circumstances that support the inference of discriminatory animus. Mr. Nowaskey expressly conditioned the position on Mr. Spindel's willingness to have sex with him.

The Second Amended Complaint omits all of the allegations that led the Court to conclude that there was no job to which Plaintiff had actually applied. Those modifications had the intended result: the Second Amended Complaint adequately pleads Plaintiff's failure to hire claim under the NYCHRL.[7]

## V. LEAVE TO AMEND

The Court does not grant Plaintiff further leave to amend his claim under the NYSHRL. Although the Court should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[w]hen a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment [even if] the proposed second amended complaint in fact cures the defects of the first.'" *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)). "Simply put, 'a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.'" *Id.* at 257–58 (quoting *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)). The Court's opinion in *Spindel I* identified the deficiency in Plaintiff's allegations against Defendant under the NYSHRL. Plaintiff failed to correct that deficiency here and has offered no

[7] Defendant did not move to dismiss Plaintiff's claim under the NYCHRL to the extent that it relied on any theory other than a failure to hire. Therefore, this opinion does not address whether his claim may proceed under any such theory.

proposed amendment to cure the deficiency. Therefore, his claim under the NYSHRL is dismissed with prejudice.

## VI. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED IN PART. Plaintiff's claim under the NYSHRL is dismissed with prejudice. Plaintiff's claim under the NYCHRL may proceed. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 58.

SO ORDERED.

Dated: October 6, 2026
New York, New York

GREGORY H. WOODS
United States District Judge